UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MIDWEST INDEPENDENT TRANSMISSION SYSTEM OPERATOR, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:09-cv-1289-TWP-DML |
| DUQUESNE LIGHT COMPANY, Defendant. | ) ) ) | |

**ORDER GRANTING MOTION TO STAY**

Plaintiff, Midwest Independent Transmission Systmen Operator, Inc. ("MITSO"), is a not-for-profit Regional Transmission Organization ("RTO") which directs the operation of electric transmission lines of thirty-one utilities in fifteen Midwest states. Defendant, Duquesne Light Company ("Duquesne"), is an electrical utility which provides electrical power to residential, commercial and industrial customers in the greater Pittsburgh, Pennsylvania area. MITSO has brought this lawsuit against Duquesne claiming that Duquesne has attempted to back out of its obligations after becoming a member of MITSO. MITSO contends that Duquesne became a member of MITSO prior to Duquesne completing a negotiated departure from another RTO, PJM Interconnection. When those negotiations took a different turn and resulted in an agreement wherein Duquesne agreed to remain a member of PJM Interconnection for another five years, Duquesne dropped its efforts to integrate into MITSO and, according to MITSO, has

failed to honor its obligations as a member of MITSO or pay the price for departing. MITSO's Complaint sounds in breach of contract and also asserts an alternative promissory estoppel claim.

Duquesne defends by asserting that its joining of MITSO was always conditional and that those conditions were never met. It also maintains that MITSO has always been aware that there were circumstances under which Duquesne would and could not become a member of MITSO and that if there is any legitimate claim for damages here, it is a subject that is best settled by the Federal Energy Regulatory Commission ("FERC"), the government agency responsible for regulating and approving membership in an RTO and which approved the settlement between Duquesne and PJM Interconnection, which resulted in Duquesne's continuing its membership in that RTO.

Before the Court now is Duquesne's Motion For Stay Pending Agency Adjudication (Doc. # 12). The motion asks the Court to apply the doctrine of primary jurisdiction and stay this action and direct that the dispute be first heard by the FERC so that the agency can use its superior expertise in determining whether a contract was formed and breached and, if required, what an appropriate "exit fee" might be. The Court finds that the motion has merit.

*Doctrine of Primary Jurisdiction*

In *Arsberry v. Illinois*, 244 F.3d 558 (7th Cir. 2001), the Seventh Circuit described the two versions of the primary jurisdiction doctrine used by courts:

> The doctrine is really two doctrines. In its central and original form, in which it is more illuminatingly described, however, as "exclusive agency jurisdiction," it applies only when, in a suit involving a regulated firm but not brought under the regulatory statute itself, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve, although the agency's resolution of it will usually be subject to judicial review. When such an issue arises, the suit must stop and the issue must be referred to the agency for resolution. If the agency's resolution of the issue does not dispose of the entire case, the case can resume subject to judicial review of that resolution along whatever path governs review of the agency's decisions, whether back to the court in which the original case is pending or, if the statute governing review of the agency's decisions designates another court, to that court.
>
> ...
>
> The doctrine of primary jurisdiction is sometimes defined quite differently, as a doctrine that allows a court to refer an issue to an agency that knows more about the issue, even if the agency hasn't been given exclusive jurisdiction to resolve it. So, for example, we read in *National Communications Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 222-23 (2d Cir.1995), that "the doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." This definition obscures the core of the doctrine, described earlier. Cases in which a court refers an issue to an agency because of the agency's superior expertise, such as the case just cited and *American Automobile Manufacturers Ass'n v. Massachusetts Dept. of Environmental Protection*, 163 F.3d 74, 81, 83 (1st Cir.1998), rather than because of the agency's jurisdiction, are not felicitously described as cases of primary jurisdiction. They are akin to those *Burford* abstention cases that like the granddaddy of the line, *Burford v. Sun Oil Co.*, 319 U.S. 315, 332-34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), itself, or the more recent *New Orleans Public Service,*

>   *Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), concern arcane regulatory issues; or cases in which the court solicits an amicus curiae brief from an interested agency; or cases in which the court has in effect appointed the agency to be a special master-an analogy embraced in *Lodge 1858, American Federation of Government Employees v. Webb*, 580 F.2d 496, 508-09 (D.C.Cir.1978). In such cases, either court and agency have concurrent jurisdiction to decide an issue, or only the court has the power to decide it, and seeks merely the agency's advice.

*Id*. at 563-64 (citations omitted).

There is "no fixed formula for applying the doctrine of primary jurisdiction." *United States v. W. Pacific R.R. Co.,* 352 U.S. 59, 64 (1956). Instead, a court must consider whether the application of the doctrine meets its articulated purposes of uniformity of decision-making and reliance on agency expertise. *Id*. These purposes serve a single principle: "that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Id.* (quoting *Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952)). If exercised, the doctrine requires the court to make a referral to the agency for purposes of an administrative ruling, but does not deprive the court of jurisdiction. *Reiter v. Cooper,* 507 U.S. 258, 268 (1993).

The case at bar appears to involve both versions of the doctrine as described in *Arsberry*. To invoke our consideration of the second variation Duquesne points to the factual and procedural history of its attempt to switch RTO's and the attendant

proceedings before the FERC.  It emphasizes the necessarily deep prior involvement of the FERC and its superior position to resolve the unique issues which have developed with this breach of contract dispute.  To the extent that the finding of a breach would result in the award of an exit fee, Duquesne argues that the FERC has exclusive jurisdiction to determine the issue of an exit fee because such a fee is intertwined with the setting of rate tariffs, which is the exclusive province of the FERC.  *See Mississippi Power & Light Co. v. Mississippi ex rel. Moore,* 487 U.S. 354, 375 (1988).  As for the promissory estoppel claim, Duquesne does not contend that the FERC has superior insight to resolve that claim.  It does argue that we should defer any consideration of that count until the FERC can adjudicate the breach of contract claim.

*Factual and Procedural History*

The FERC regulates Duquesne, MITSO and all RTOs.  It encourages the participation of electrical utilities in RTOs as a more efficient manner of coordinating power transmission services over the national power grid and approves the conditions under which a utility may join or withdraw from one.  Members of RTOs enter into transmission owners agreements ("TO Agreements") which are approved by the FERC.

In 2007, the FERC was presented a petition under Section 205 of the Federal Power Act by Duquesne, which sought to leave its current RTO, PJM Interconnection. The FERC has exclusive jurisdiction over Section 205 petitions and  Duquesne

conditioned its petition to withdraw, in part, on its own satisfaction with how the FERQ would require it to resolve any residual liability to PJM Interconnection. It also conditioned its withdrawal on approval of its joining MITSO, MITSO's implementation of a centralized energy balancing program by a date certain and MITSO's submission to the FERC of an integration filing.

The FERC issued an order dated January 17, 2008 approving Duquesne's conditional petition to withdraw from PJM Interconnection over numerous objections[1] from PJM Interconnection members and others, but conditioning its approval on certain requirements of Duquesne. One of those requirements was that Duquesne satisfy any contractual requirements for withdrawal that it had with PJM Interconnection and that such satisfaction be found just and reasonable by the FERC. On July 3, 2008, Duquesne and MITSO jointly filed a report with the FERC outlining the process and procedures to be followed for Duquesne's withdrawal from PJM Interconnection and integration into MITSO's power transmission facilities. A month later, Duquesne submitted to MITSO its signed application for membership along with a tender of the $15,000 membership fee and several other documents necessary for Duquesne to become a transmission-owning member of MITSO, including a signed TO Agreement.

On August 21, 2008, with representatives of Duquesne on hand, the Board of

---

[1] One of the objections which the FERC rejected was that Duquesne's request to withdraw was conditional and not absolute.

Directors of MITSO voted to approve Duquesne's application for membership in MITSO. The FERC then issued its order conditionally approving the transfer of Duquesne's RTO membership from PJM Interconnection to MITSO, effective October 1, 2008. Subsequent meetings were held to begin the process of integration of Duquesne into MITSO, nevertheless on November 4, 2008, MITSO received a copy of a draft settlement agreement between Duquesne and PJM Interconnection wherein Duquesne agreed to remain a member of PJM Interconnection for an additional five years.  That settlement was finalized in December 2008 and submitted for approval to the FERC.  Duquesne then disavowed any contractual obligations to MITSO in January 2009.

On January 29, 2009, the FERC approved the final settlement between Duquesne and PJM Interconnection over the objection of MITSO.  In so doing, it terminated the various proceedings related to Duquesne's efforts to transfer RTO's and stated in relevant part at the beginning of its order , in paragraph 3,  that:

> For the reasons discussed below, we approve the Settlement Agreement and will permit the Duquesne zone RPM auction parameters to be included in PJM's upcoming RPM auction.  The Settlement Agreement, by its terms, terminates each of the above-captioned proceedings.  However, we also acknowledge that the terms pursuant to which Duquesne will be permitted to terminate its obligations to the Midwest ISO [MITSO], including any obligation by Duquesne to pay an exit fee as a condition to it's withdrawal from the Midwest ISO Transmission Owners Agreement [TO Agreement], raises issues that cannot be resolved here.  Accordingly, we will permit Midwest ISO, or other affected parties, to make a separate filing addressing these issues.

Later, in paragraph 33 of its order,  the FERC reiterated its conclusion that MITSO's

claim of entitlement to an exit fee was a subject which was not amenable to resolution in those proceedings. It invited a separate filing or, the agency added, MITSO might pursue the issues "in an appropriate judicial forum."

These last quoted words from the FERC are what MITSO hangs its hat on, in filing this lawsuit. And, clearly, they have a cognizable claim of some sort over which this Court has jurisdiction. However, unlike MITSO, we do not find the court's language as suggestive that the agency feels the dispute is more properly decided by a court or, more specific to the request here, a jury. We interpret the FERC's order in more colloquial terms to mean: "MITSO - you do whatever you feel you need to do to address any damages incurred or remedy any contractual breach, but it will take too much additional time and effort for us to resolve those issues without undue delay to this already complicated and time consuming group of proceedings - so do it in a separate filing."

We agree with Duquesne, that the agency's superior knowledge, both substantive and historical with respect to the factual circumstances, its expertise in interpretation of TO Agreements and exit fee prerequisites, along with the public policy interest in consistency and uniformity in the regulation of this industry, requires us to withhold our review of the matters until the FERC can weigh in on what it deems appropriate under these circumstances with which it is entirely familiar. This is truly a case where the expertise and experience of the agency is too great for a court to waive-off and attempt to duplicate on its own.

Having decided that we should obtain the consideration of the FERC before making any judicial determination in this dispute, the question becomes how to best accomplish that goal. In a footnote to its brief, Duquesne cites some examples from other district court proceedings and tells us that some courts have directed a plaintiff to file a petition for relief with the FERC, others have requested the FERC to answer specific questions while staying further action in the lawsuit. Duquesne then states that it does not care how we put the dispute in front of the FERC. Not surprisingly, since its position has been that no participation of the FERC is necessary, MITSO has not suggested how the dispute is best put before the agency. Now that we have determined that the experience of the FERC is invaluable and necessary, we think MITSO should have an opportunity to participate in structuring a request for that expertise while this matter is stayed. Accordingly, we will ask the parties to attempt to stipulate to an order to be entered by this Court which would stay the current proceedings here and allow the FERC to opine upon the issues of whether, in light of the contingencies which accompanied both Duquesne's request to withdraw from its RTO and the order initially approving it, a breach of contract has occurred and whether MITSO is entitled to an exit fee.

*Conclusion*

For the reasons explicated in this entry, Defendant's Motion For Stay Pending Agency Adjudication (Doc. # 12) is GRANTED. The parties are given fourteen (14) days from the date of this order to submit a stipulated order which would stay these

proceedings and address the manner in which the issues discussed in this entry are to be submitted to the FERC.  If the parties are unable to stipulate to such an order, each may submit a proposed order within twenty-one (21) days from the date of this order for the Court's consideration and the court will issue an order to accomplish the intentions expressed in this entry.

      IT IS SO ORDERED.   07/12/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

Gordon A. Coffee
WINSTON & STRAWN, LLP
gcoffee@winston.com

James Dimos
FROST BROWN TODD LLC
jdimos@fbtlaw.com

Thomas Lee Kirsch II
WINSTON & STRAWN LLP
tkirsch@winston.com